UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ethel Powell, ) | Civil Action No.: 4:16-cv-02795-RBH |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| State Farm Fire and Casualty Company, ) | |
| Defendant. ) | |

This is an action for breach of contract and bad faith refusal to pay underinsured motorist benefits. The matter is before the Court on Defendant's motion for summary judgment on both the breach of contract and bad faith claims and Plaintiff's cross-motion for partial summary judgment on the breach of contract claim. *See* ECF Nos. 23 & 26. The Court denies both motions for the reasons herein.[1]

**Background**

On May 9, 2016, Plaintiff Ethel Powell ("Plaintiff") and her husband Joseph ("Mr. Powell") (collectively, "the Powells") were injured in an automobile accident in Longs, South Carolina, when their 1996 Ford Ranger pickup was struck by a vehicle operated by Benjamin Thibert, the at-fault driver. *See* Complaint [ECF No. 1-1] at ¶¶ 4–5; Answer [ECF No. 4] at ¶¶ 4–5. At the time of the accident, the Powells had four vehicles insured by Defendant State Farm Fire and Casualty Company ("Defendant"): (1) the Ford Ranger, (2) a 2008 Nissan Altima, (3) a 1998 Cadillac Seville, and (4) a 2016 Hyundai Sonata. *See* Compl. at ¶ 7; Ans. at ¶ 7. The Powells owned the Ford, Nissan, and Cadillac, and as explained below, they had just recently leased the Hyundai. Defendant asserts that the

---

[1] Pursuant to Local Civil Rule 7.08 (D.S.C.), the Court does not find a hearing is necessary on the summary judgment motions.

Powells had three policies in effect at the time of accident, that the policy insuring the Cadillac was transferred to insurance on the Hyundai (and the Cadillac simply had temporary coverage for fourteen days), and that at no time were there more than **three** policies of insurance. *See* ECF No. 23-1 at p. 2; ECF No. 34 at pp. 7–8.

Thibert's liability insurer paid its policy limits, and the Powells filed a claim with Defendant seeking underinsured motorist ("UIM") benefits. *See* Compl. at ¶ 6–7; Ans. at ¶ 6–7. Defendant paid the Powells $300,000 in UIM coverage, asserting that the Powells had three policies in effect at the time of the accident and that the maximum amount of UIM coverage available under each policy was $100,000. *See* Boatright Letter [ECF No. 23-5]. The Powells, however, claimed they were owed $400,000 in UIM coverage because they had four vehicles insured with Defendant, and therefore they demanded an additional $100,000 in UIM benefits. *See* Morris Letter [ECF No. 35-1]. Unable to resolve the dispute, the Powells filed a complaint in state court asserting claims for breach of contract and insurance bad faith. *See* ECF No. 1-1. On August 11, 2016, Defendant removed the action to this Court on the basis of diversity jurisdiction, and the parties subsequently filed cross-motions for summary judgment and responses.[2] *See* ECF No. 1, 23, 26, 34, & 35.

## **Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407,

---

[2] Joseph Powell was originally a named plaintiff in this case, but the Court dismissed his claims without prejudice as premature because he filed this action before suing Thibert and before obtaining a judgment against him. *See* ECF Nos. 42, 47, & 50. The Court did not dismiss Plaintiff Ethel Powell's claims because Defendant represented it was "'agreeable to stipulating that, with regard to Ethel Powell, she need not file suit against Thibert to establish the amount of her damages.'" ECF No. 47 (quoting ECF No. 45 at p. 1). The Court notes the complaint alleges Mrs. Powell was "the most seriously injured," and Defendant's answer admits this allegation. *See* Compl. at ¶ 5; Ans. at ¶ 5.

413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt

3

believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

> When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion.

*Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted).

## **Discussion**

Defendant has moved for summary judgment on both the breach of contract and bad faith claims, and Plaintiff has cross-moved for partial summary judgment on the breach of contract claim. *See* ECF Nos. 23 & 26. However, neither party is entitled to summary judgment.

**I.  Breach of Contract Claim**

    **A.  Defendant's Motion for Summary Judgment**

Defendant asserts that the Powells had three insurance policies each providing $100,000 of UIM coverage at the time of the accident, and that no breach of contract occurred because Defendant paid the Powells the maximum $300,000 of UIM coverage available. Meanwhile, Plaintiff contends she is owed an additional $100,000 in UIM coverage because she and her husband had four vehicles insured with Defendant at the time of the accident.

The elements for a breach of contract claim are (1) the existence of the contract, (2) its breach, and (3) the damages caused by such breach. *Allegro, Inc. v. Scully*, 791 S.E.2d 140, 145 (S.C. 2016). As indicated by the parties' arguments, this case hinges on how many contracts of insurance the

4

Powells had with Defendant.

According to the evidence, the Powells are an elderly couple who maintained automobile insurance through Defendant and were longtime clients of the Charlie Stuart Insurance Agency, which sold State Farm insurance.[3] *See* Pl.'s Ans. to Def.'s Interrs. [ECF Nos. 23-2 & 34-1] at ¶ 6; Stuart Dep. [ECF No. 26-14] at pp. 6–7; Jos. Powell Dep. [ECF Nos. 23-5, 26-11, 26-12, & 34-5] at p. 34. Nick Santangelo worked as an agent for the Charlie Stuart Insurance Agency and had known Mr. Powell for approximately seven years; Santangelo testified both Mr. and Mrs. Powell seemed like "honest" people. *See* Santangelo Dep. [ECF Nos. 26-13 & 34-6] at pp. 8–9. **On May 1, 2016**, the Powells had three separate written insurance policies with Defendant on their 1996 Ford Ranger, 2008 Nissan Altima, and 1998 Cadillac Seville:

**(1)** The 1996 Ford Ranger was insured by policy number 069-9474-F03-40A with a policy period of December 3, 2015, to June 3, 2016.

**(2)** The 2008 Nissan Altima was insured by policy number 512-5939-C19-40 with a policy period of March 19, 2016, to September 19, 2016.

**(3)** The 1998 Cadillac Seville was insured by policy number 025-3835-C05-40B with a policy period of March 5, 2016 to September 5, 2016.

*See* ECF Nos. 26-2, 26-4, & 26-5; *see also* Jos. Powell Dep. at p. 37.[4] The policies had identical coverages, and each policy provided UIM benefits with limits of $100,000/$300,000/$50,000. *See* ECF No. 26-2 at pp. 4–5; ECF No. 26-4 at p. 4; ECF No. 26-5 at p. 3. Each policy contained a provision that the UIM limits were the most Defendant would pay "regardless of the number of . . . vehicles insured." *See* ECF No. 23-4 at pp. 3, 5; ECF No. 26-10 at p. 8. The bills for all three policies listed "Your State

---

[3] Charlie Stuart had known Mr. Powell for fifteen years. *See* Stuart Dep. [ECF No. 26-14] at p. 6.

[4] Mr. and Mrs. Powell were named on each of the three policies and designated as either the "principal driver" or "other household driver." *See* ECF No. 26-2 at pp. 2, 4; ECF No. 26-4 at pp. 2–3; ECF No. 26-5 at pp. 2–3.

Farm Agent" as "Charlie Stuart Jr." *See* ECF No. 26-2 at p. 2; ECF No. 26-4 at p. 2; ECF No. 26-5 at p. 2.

As Plaintiff observes, "[t]he origins of the dispute in this case have their roots in the lease of the 2016 Hyundai Sonata by Mr. Powell shortly before the [**May 9, 2016**] collision." ECF No. 26-1 at p. 4. **On May 2, 2016**, Mr. Powell went to a car dealership and leased a 2016 Hyundai Sonata. Jos. Powell Dep. [ECF Nos. 23-5, 26-11, 26-12, & 34-5] at pp. 27, 31–32. While at the dealership, Mr. Powell spoke via telephone to his insurance agent Nick Santangelo; Mr. Powell and Santangelo have varying recollections of the phone call.

According to Mr. Powell, the car salesman at the dealership called Santangelo to verify that Mr. Powell had insurance. Jos. Powell Dep. at pp. 31, 34. Mr. Powell then spoke directly with Santangelo and told him that he intended to sell his Cadillac but wanted to keep insurance on the Cadillac as well as the license plate. *Id.* at pp. 31–33, 35. Santangelo told Mr. Powell "that he would insure both cars," i.e., both the Cadillac and the Hyundai. *Id.* at pp. 35, 75–76. Mr. Powell testified that after speaking with Santangelo on the phone and leaving the car dealership, he thought that "all of my cars were insured" and that he "had four policies on the four cars." *Id.* at pp. 36–39, 46. Mr. Powell further testified that when the accident occurred a week later on May 9, 2016, he thought he "had four separate automobile insurance policies in place with State Farm." *Id.* at p. 78. He also testified, "We negotiated, Nick and I, as buying insurance at an agent [*sic*]. I don't know that much about the insurance, but I trusted Nick and I trusted Charlie [Stuart], that they would, being I have my insurance and everything with them, that they would do the best thing for me." *Id.* at p. 34.

In addition to Mr. Powell's deposition testimony, Plaintiff's answers to Defendant's interrogatories state that Mr. Powell will "testify that when he purchased a new car he took out identical

6

coverage as his other cars; that he understood he was receiving a new and separate policy on the new car and that the policy on the Cadillac would remain in full force"; that Mr. Powell "is informed and believes he had four automobile policies in effect on May 9, 2016"; and that "his medical bills and especially those of [Plaintiff] Mrs. Powell far exceed the already tendered coverage" of $300,000 in UIM benefits. *See* ECF Nos. 23-2 & 34-1 at ¶¶ 6, 8.

Santangelo testified he does not have "a specific memory" of what Mr. Powell told him during their phone call on May 2, 2016. *See* Santangelo Dep. at pp. 25–26. Santangelo does not specifically remember Mr. Powell saying he was "going to sell the" Cadillac or was "going to get another thirty days" of insurance. *Id.* at p. 25. Instead, Santangelo testified about the procedure he typically follows when a person is buying a new vehicle and wants to "swap" vehicles in their automobile policy. *Id.* at pp. 13–14, 18, 20–25. Santangelo further testified that on May 2, 2016, he "switched cars from the Cadillac to the Hyundai on the same existing policy that [Mr. Powell] had for fifteen years or more." *Id.* at p. 23. As Santangelo's testimony indicates (and as Defendant acknowledges in its brief), Santangelo replaced the Cadillac for the Hyundai such that the policy insuring the Cadillac was transferred to insurance on the Hyundai. *See id.*; *see also* ECF No. 34 at p. 7.[5]

In essence, what appears to have happened is that when Mr. Powell spoke to Santangelo on May 2, 2016, Santangelo did not issue a separate written policy with a separate policy number for the Hyundai but instead simply replaced the Cadillac for the Hyundai on the already-existing written policy that had insured the Cadillac. Plaintiff has submitted a copy of the declarations page for the Hyundai seeming to confirm this fact—this document shows the policy period for the Hyundai began on "May 02, 2016," and reflects the same policy number (025-3835-C05-40) that had been used for the Cadillac.

---

[5] Santangelo explained that the Powells had fourteen days of coverage on the Cadillac by virtue of temporary coverage provisions in the policy. Santangelo Dep. at pp. 17-19, 23–24; Mooney Supp. Aff. [ECF No. 34-7] at ¶ 6.

7

*See* ECF No. 35-4. Thus, when the accident happened seven days later on May 9, 2016, the Powells only had three actual written policies of automobile insurance.[6] But this fact is not necessarily fatal to Plaintiff's breach of contract claim.

Although Santangelo did not issue a new/separate/fourth written policy on May 2, 2016, the lack of one does not automatically entitle Defendant to summary judgment. Instead, as Plaintiff correctly points out, the issuance of an actual written insurance policy is not a mandatory prerequisite to the existence of insurance in South Carolina, as Defendant would have it in this case.[7] The South Carolina Supreme Court has explained that "[g]enerally, a valid contract to procure insurance exists where there is established a promise by the insured to take a policy of insurance and an undertaking on the part of the agent or broker to procure it, with sufficient information provided upon which to procure the policy." *Riddle-Duckworth, Inc. v. Sullivan*, 171 S.E.2d 486, 491 (S.C. 1969). An oral contract of insurance is enforceable in South Carolina. *Carolina Aviation v. Glens Falls Ins. Co.*, 51 S.E.2d 757, 762 (S.C. 1949). "So far as the law is concerned, an insurance contract does not differ from other contracts. If the minds of the parties have met in regard to the essential parts of the agreement, it does not matter whether the form of the contract is written or oral." *Gaskins v. Firemen's Ins. Co. of Newark, N. J.*, 33 S.E.2d 498, 499 (S.C. 1945). "Oral contracts of insurance, like other insurance

---

[6] Defendant provided "Confirmation of Coverage" specifying the three policies that existed on May 9, 2016: (1) the 1996 Ford Ranger (covered by policy number 069-9474-F03-40A), (2) the 2008 Nissan Altima (covered by policy number 512-5939-C19-40), and (3) the 2016 Hyundai Sonata (covered by policy number 025-3835-C05-40C). *See* ECF No. 26-9; *see also* Mooney Aff. [ECF No. 23-4] at ¶ 4. Interestingly, Mr. Powell went to Santangelo's office on May 13, 2016 (several days after the accident) intending to discuss a letter he had received from the at-fault driver's insurance company. While Mr. Powell was there, Santangelo "wrote him [Mr. Powell] out a separate policy, a new policy" for the Cadillac. *See* Santangelo Dep. at p. 22. Mr. Powell testified he went to Santangelo's office on May 13 to discuss the accident, not to apply for insurance; Mr. Powell asserted, "As far as the Cadillac having insurance on it, it was never supposed to have been taken off." *See* Jos. Powell Dep. at pp. 47–52.

[7] Indeed, Defendant argues: "At the time of the Powells' May 9, 2016 accident[,] State Farm was only collecting a premium to insure three cars – a 1996 Ford Ranger, a 2008 Nissan Altima and a 2016 Hyundai Sonata. Coverage is not based upon the number of vehicles owned by the insured. Instead, coverage is based on the number of policies." ECF No. 34 at p. 10 (citing Mooney Supp. Aff. at ¶ 6).

8

contracts, must be definite and certain. All parties must agree upon the necessary terms, including those in relation to the subject matter insured, the risk insured against, the commencement and duration of the risk, the amount of insurance, and the premium to be paid." *Id.*

Plaintiff argues that when Mr. Powell spoke to Santangelo on the phone on May 2, 2016, Mr. Powell believed Santangelo, as an agent for Defendant, had the authority to bind Defendant to provide the same coverage (i.e., three policies each providing $100,000 in UIM coverage) that Mr. Powell had been maintaining on three vehicles (the Ford, Nissan, and Cadillac) to the one (the Hyundai) he was about to lease. *See* ECF No. 35 at pp. 13–15. In support of this argument, Plaintiff cites *Noisette v. Ismail*, wherein the South Carolina Court of Appeals explicitly recognized that "in the case of automobile insurance, a binder[8] may be given orally . . . ." 384 S.E.2d 310, 313 (S.C. Ct. App. 1989) (favorably citing *American Jurisprudence*), *rev'd in part on other grounds*, 403 S.E.2d 122 (S.C. 1991). *See also Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 608 (S.C. 1962) (discussing oral binders in the context of automobile insurance); 43 Am. Jur. 2d Insurance § 208 ("Oral binders or contracts for temporary insurance pending an investigation of the risk by the insurer, or until the issuance of a formal policy, when entered into by a general agent or by a duly authorized agent acting in this respect within the apparent or ostensible scope of his or her authority, are generally binding on the insurance company the agent represents."). Moreover, the South Carolina Supreme Court has recognized in dicta that the "essential feature[s]" of an insurance agreement can be "implied" "by reason of [] former dealings between" an insured and an insurance agent. *See Dubuque Fire & Marine Ins. Co. v. Miller*, 64 S.E.2d 8, 9 (S.C. 1951) (addressing a situation where a representative of "regular insurance clients" of an

---

[8] "A binder is a temporary contract for insurance, the terms of which determine the amount and type of coverage extended until the application is either accepted or denied." *Nat'l Grange Mut. Ins. Co. v. Firemen's Ins. Co. of Newark, New Jersey*, 425 S.E.2d 754, 758 n.4 (S.C. Ct. App. 1992).

9

insurance agency "had a conversation over the telephone with" the insurance agent).

The Court concludes there is a question of fact as to whether Mr. Powell obtained a new and separate contract of insurance on May 2, 2016 when he spoke to Santangelo. There are at least two reasonable inferences that can be drawn from the above evidence: (1) Mr. Powell requested Santangelo to issue a new/separate/fourth written policy of insurance for the Hyundai providing the same UIM coverage that the Powells had on all three of their other vehicles (with limits of $100,000/$300,000/$50,000), and Santangelo gave an oral binder to that effect; or (2) Santangelo understood Mr. Powell to be requesting that the Hyundai simply replace the Cadillac on his already-existing policy. This matter must be resolved by a jury. Moreover, because there is a question of fact regarding the existence of an insurance contract, the Court is unable to reach the questions of breach and damages at this time. Accordingly, the Court must deny summary judgment as to Plaintiff's breach of contract claim.[9]

### B. Plaintiff's Cross-Motion for Partial Summary Judgment

Plaintiff argues she is entitled to summary judgment because Defendant admits in its answer "'that at the time of the accident the [Powells] owned four automobiles which were provided coverage . . . .'" ECF No. 26-1 at p. 10 (quoting Ans. at ¶ 7). However, Plaintiff misinterprets Defendant's admission, which states in full: "Answering paragraph 7 [of the complaint], [Defendant]

---

[9] The Court notes Defendant criticizes much of Mr. Powell's testimony, claiming his "memory is unreliable" and his "testimony is of questionable validity." ECF No. 34 at pp. 5–7. While it is true that Mr. Powell's deposition testimony is often unclear and difficult to understand, this fact is all the more reason why this case must be put before a jury. This Court obviously cannot decide whether Mr. Powell's testimony/recollection of his phone call with Santangelo is reliable or not at the summary judgment stage. *See Jacobs*, 780 F.3d at 569 (emphasizing a court "cannot weigh the evidence or make credibility determinations" when ruling on a motion for summary judgment).

Moreover, the Court is aware of the parties' other arguments concerning interpretation of an insurance contract, cancellation of a policy, "splitting"/"sharing" UIM coverage, stacking UIM coverages, a meaningful offer of UIM coverage, etc. However, as the Court's above analysis indicates, the question in this case is relatively straightforward—was a new contract of insurance created when Mr. Powell spoke with Santangelo seven days before the accident?

admits that at the time of the accident the [Powells] owned four automobiles *which were provided coverage under three policies and [Defendant] would further show that it has paid the maximum UIM benefits under the three policies in existence at the time of the [Powells'] accident* and the remaining allegations in paragraph 7 are denied." Ans. at ¶ 7 (emphasis added). Thus, for the same reasons explained above, the Court cannot grant Plaintiff summary judgment on the breach of contract claim because there is a question of fact regarding the existence of an insurance contract.[10]

## II. Bad Faith Claim

"The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396–97 (S.C. 1992). Again, there is a question of fact regarding whether there existed a mutually binding separate/fourth contract of automobile insurance between Defendant and the Powells. If there was such a contract, a jury could reasonably conclude from the evidence that Defendant acted in bad faith by refusing to pay the UIM benefits due under the contract and that Plaintiff was damaged as a result. In other words, whether Defendant's refusal to pay the additional $100,000 in UIM proceeds was reasonable is a question of fact dependent upon whether

---

[10] Plaintiff presents an argument regarding a "meaningful offer" of UIM, *see* ECF No. 26-1 at pp. 15 n.22, 19–22, but the complaint makes no such allegation and this is a damages-only action. *See generally* Compl. Furthermore, a meaningful offer claim ordinarily arises via a declaratory judgment action, given that in cases where a meaningful offer was not made, the remedy is reformation of the policy "by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured." *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 405 (S.C. 1996); *see Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 54 (S.C. 2013) (recognizing reformation is an equitable remedy). Notably, the complaint seeks only monetary damages, not declaratory or equitable relief.

a fourth insurance contract existed. Accordingly, the Court must deny summary judgment as to Plaintiff's bad faith claim.

## **Conclusion**

This case turns on whether a fourth contract of automobile insurance existed at the time of the Powells' May 9, 2016 accident. Genuine issues of material fact exist for both the breach of contract and bad faith claims, and therefore the Court cannot grant summary judgment on either claim. Accordingly, the Court **DENIES** Defendant's motion for summary judgment [ECF No. 23] and **DENIES** Plaintiff's cross-motion for partial summary judgment [ECF No. 26].

**IT IS SO ORDERED.**

Florence, South Carolina  
March 27, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge